## Appeal of Polish Falcons, etc.

*James F. Malone, Jr.*, and *Walter J. Laska*, for appellants.

*A. G. Uncapher*, for Pennsylvania Liquor Control Board.

LENCHER, J., March 16, 1944.—To correct any mistaken impressions as to the meaning of our order granting new liquor licenses in the cases above entitled, we make plain herewith the developments which led to those orders. Since last September appeals from orders of the Liquor Control Board in Allegheny County have been filed here in our court under the provisions of the acts of assembly approved May 27, 1943, P. L. 688, 694. Most of the appeals concern suspensions of liquor licenses, and these are the first cases in which we could isolate the sole question considered from other possible reasons that could move the Liquor Control Board to refuse to grant a new club liquor license. No court in Pennsylvania questions the Liquor Control Board's discretionary power to refuse applications for new club liquor licenses. The sole question before us concerns only the board's claim to have no power at all to grant a new club liquor license so long as the retail liquor license quota, hotels excluded, is exceeded. The issue has appeared repeatedly in the courts of our Commonwealth. It was deemed wise for us to determine whether all of us could agree to sustain the legal inter-

pretation contended for by the Liquor Control Board. The question concerns language which first clearly exempts new club liquor licenses from the quotas, and then seems to deny clubs the exemption first created. Inevitably the proposition must include this general consideration: Does a club—athletic, recreational, political, fraternal—which maintains a bar and sells liquor to its members fall within the quota fixed for retail liquor licenses for public restaurant and eating places?

Confronted with that question, all other issues being admittedly out of the case, Judge Hoban of Lackawanna County on July 17, 1940, reversed the refusal of the Pennsylvania Liquor Control Board to grant a new liquor license to a club. Interpreting the language of the Liquor License Quota Act of June 24, 1939, P. L. 806, hereinafter quoted, he held that the population restriction set up in the act as to the granting of retail liquor licenses cannot include new liquor licenses to clubs. On appeal to the Superior Court of Pennsylvania, that appellate tribunal, without a dissenting opinion in the case of the Lithuanian Beneficial Association's Club Liquor License Case, 142 Pa. Superior Ct. 556, held that *its* only province under the law was to determine whether courts below had jurisdiction and whether the proceedings were regular. This was in line with previous declarations of the appellate courts that, if there was no uniformity of decisions on this important question, that was something for the legislature to care for: McGettigan's Liquor License Case, 131 Pa. Superior Ct. 280, 286. The same question, again unattended by any other problems, came before President Judge Hughes—now Justice Hughes of our Supreme Court—and Judge Burnside of Washington County in B. P. O. E. of Monongahela's License, 43 D. & C. 457, and the same conclusion was reached, the quota there, too, being "the only thing that prevents the issuance of this license". Decisions to the contrary will be found. In Appeal of Legion Home As-

sociation of Danville, 48 D. & C. 123, Kreisher, P. J., reviews 45 cases on the question, finding that 21 cases in Pennsylvania sustained the Liquor Control Board's automatic refusal—without citing any other reason—to grant a new club liquor license once the quota is exceeded, while 24 opinions studied by him held to our interpretation, to wit, that the Quota Act does not apply to applications for new club liquor licenses.

The cases above entitled were specially placed upon the argument list. We heard the narrow question argued, then heard the evidence de novo, testimony being presented only by the appellant clubs. Their evidence was uncontradicted and the Liquor Control Board presented no testimony. The purposes and personnel of each club were highly recommended by citizens appearing before us. The title of the Liquor License Quota Act of 1939, reads as follows:

"An act limiting the number of licenses for the retail sale of liquor, malt or brewed beverages, or malt and brewed beverages, to be issued by the Pennsylvania Liquor Control Board; defining hotels, and prescribing the accommodations required of hotels in certain municipalities."

"No licenses shall hereafter be granted by the Pennsylvania Liquor Control Board for the retail sale of malt or brewed beverages . . . in excess of one of such licenses, of any class, for each one thousand inhabitants or fraction thereof, in any municipality, exclusive of licenses granted to hotels. as defined in this act, and clubs. . . . Nothing contained in this section shall be construed as denying the right to the Pennsylvania Liquor Control Board to renew or to transfer existing retail licenses of any class, notwithstanding that the number of such licensed places in a municipality shall exceed the limitation hereinbefore prescribed; but where such number exceeds the limitation prescribed by this act, no new license, except for hotels as defined in this act, shall be granted so long as said limitation is exceeded"; sec. 2.

Clearly clubs are specifically excluded from the quota in the first sentence of section 2. But the word "clubs" disappears in the last part of the section providing that "where such number exceeds the limitation prescribed in this act, no license except for hotels as defined in this act shall be granted therein so long as said limitation is exceeded". It should be first observed that if club licenses are included within its provisions this act would have to be held unconstitutional as to clubs, the title being clearly defective and in contradiction of article III, sec. 3, of our Constitution. The word "club" does not appear in the title, and indeed is not defined anywhere in this act. In the Liquor Control Act of June 16, 1937, P. L. 1762, a club is defined as "any reputable group of individuals associated together not for profit for legitimate purposes of mutual benefit, entertainment, fellowship or lawful convenience, having some primary interest and activity to which the sale of liquor shall only be secondary . . ." This definition is substantially the same as in the Beverage License Law of June 16, 1937, P. L. 1827. In Appeal of Thomas P. Lambert Post No. 2540, V. F. W., 49 D. & C. 281, President Judge Shull of Monroe County finds the act to exclude clubs from the quota, and emphasizes that "the particular effect of including club licenses within the quota provision would be to prevent issuance of any such license for an indefinite number of years, in view of the fact that the statute itself had placed an artificial value on restaurant licenses which would result in the perpetual continuance of existing licenses of that class. . . . If the statute should be so construed, then it would be unconstitutional insofar as club licenses were concerned because the title failed to disclose any such purpose".

Indeed, some judges, having considered this definition of clubs above given, have gone so far as to doubt that new club liquor licenses could ever have been in-

cluded within the operation of the Quota Act of 1939, even had the word "clubs" never appeared in the first sentence of section 2. See In re License of I. B. P. O. E. of W., John F. Moorland Lodge No. 801, 42 D. & C. 222, 228. Without passing on that question, we believe the affirmative appearance of the word "clubs" clearly creates an exception, and takes them out of the quota. We are not free to treat the word "clubs" as surplusage; to do so would violate the fundamental rule that, in construing a statute, it is not possible to treat language therein as mere surplusage unless no other construction is reasonably possible: West v. Lysle et al., 302 Pa. 147; Reinbold v. Commonwealth, 319 Pa. 33. Judge Hoban says in the Lithuanian case referred to above:

". . . if the Legislature decided to limit the number of licenses to be issued to clubs, it could have said so in very plain language, just as it did in the case of retail restaurant licenses. Not having said so, and having in one part of the act said specifically that clubs were to be exempted from license limitation, we are of the opinion that the legislature clearly meant that no restriction was to be placed on the issue of liquor licenses for bona fide clubs otherwise meeting the test of law and regulations."

There is no attempt in section 1 to define the different types of licenses except to define the one word "hotels" and to classify hotels in general according to sleeping accommodations. The restriction includes both beer and liquor licenses. The legislature clearly intended to exempt clubs and hotels from any and all types of populations. From the title and the context, the words "in excess of one of such licenses of any class, for each 1,000 inhabitants or fraction thereof" refer to the two classes of licenses, liquor licenses under the liquor act, and beverage licenses under the beverage act, and mean that the quota is to be calculated on the

total of said two classes: In re License of I. B. P. O. E. of W., John F. Moorland Lodge No. 801, 42 D. & C. 222, 227.

This interpretation excluding clubs from the Quota Act is supported by the application of some of the provisions of sections 51 and 52 of the Statutory Construction Act of May 28, 1937, P. L. 1019, providing that where words used by the legislature are not explicit we may determine the legislative intent by considering, inter alia, the necessity for the law, the mischief to be remedied, the possible injustice, inconvenience, and common sense of each possible interpretation and any contemporaneous legislative history. As to need for new legislation, the Liquor Control Board, before the Liquor License Quota Act of 1939, had—and to this day has—broad power in its discretion to refuse the issuance of new club liquor licenses—power it did not have as to restaurants and other eating places. But there was growing up an overabundance of restaurants and eating places under the mandatory provisions relating to the issuance of liquor licenses for them. Section 403 of the Liquor Control Act of 1937, P. L. 1762, provides that, while the Liquor Control Board *may* in its discretion grant and issue a liquor license to a club, it *shall* issue a license to a hotel or restaurant once the applicant fulfills the formal legal requirements. And so, too, as to licenses for eating places, while in the case of a club the board *may* in its absolute discretion issue a retail dispenser's license, section 6 of the Beverage License Law of 1937, P. L. 1827, provides that it *shall*, in the case of any restaurant or hotel seeking a license, issue it so long as the board is satisfied with the truth of the statements in the application. Restaurants and eating places piled up in even greater numbers, because under the provisions of sections 403 and 408 of the Liquor Control Act of 1937, P. L. 1762, the board has no discretion in granting or refusing the transfer of a liquor license in the case of restaurants and eat-

ing places where all the statutory requirements have been met. The duty of the board to transfer is mandatory once the applicant complies with certain specific conditions laid out in the act, the board being given discretion to refuse the transfer only in certain exceptional situations, such as locations within 300 feet of a church. Some decisions denying the board's mandatory duty to transfer liquor licenses for restaurants and eating places do, indeed, exist: In re Transfer of Liquor License, 46 D. & C. 93. But the majority of the opinions make the transfer mandatory: Larkin's License, 35 D. & C. 684; Popp's License, 41 D. & C. 500. It would seem settled now that the transfer should be denied only because of so basic a matter as a covenant in a deed or other serious restriction running with land: Cheris' Liquor License, 127 Pa. Superior Ct. 355. We hold no briefs for the evils that can grow out of the administration of club liquor licenses. But that must not blind us to the plain intent of the law. The mischief against which the Quota Act of 1939 is directed is clearly the public restaurant and public eating places, which by 1939 had already become so numerous in some localities as to make it difficult for some of them to operate a profitable establishment, so numerous as to create vicious social evils in the grinding competition that came with so great a number of them.

The other possible interpretation, placing clubs within the retail license quota, may well achieve an absurd result. It is one of the presumptions provided by the Statutory Construction Act, supra, that our legislature does not intend absurd results. As Judge Hoban said in his opinion in the Lithuanian Association case:

"It [meaning the act of assembly] is workable so long as the number of retail restaurant licenses does not fall below the authorized number contemplated in the restriction of the act. But suppose that the number of retail restaurant licenses falls below the authorized number by just one license. There would then be noth-

ing to prevent a hundred clubs in any municipality from applying for and receiving licenses so long as in the meantime a new restaurant liquor license was not issued to bring the number up to the authorized quota."

And an able jurist who holds a contrary view as to the technical legal question involved, Judge Sheely, in Appeal of the Harrisburg Country Club, no. 342, January sessions, 1942, of Dauphin County, sees this absurd possibility, and says, "we do agree with the appellant that the statute causes what may be termed as an absurd condition . . . There may be any number of club licenses issued so long as the quota is not filled. But when the quota is filled or exceeded, no club license may thereafter be issued even though there are no club licenses outstanding in the municipality . . . This is a legislative problem".

That one beverage license in excess of the quota, including clubs, in a restaurant or eating place conducted at a place or in a manner offensive to the sensibilities of some of its neighbors, should for an undetermined number of years bar respectable members of a private club from getting a liquor license is a result absurd and unreasonable. Such a result was not the intention of the legislature.

The contemporary legislative history supports the interpretation that clubs are not within the Liquor License Quota Act of 1939. We are assured by members of the General Assembly for that session, including our colleague, Judge L. Kenneth Harkins, that the legislature clearly intended to exclude clubs from the quota. The Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 51, gives us the right to consider such contemporaneous legislative history where the legislative intention is not easily ascertained from the provisions of a bill, this being merely declaratory of existing laws: Miles' Estate, 272 Pa. 329; Orlosky v. Haskell, 304 Pa. 57. We have examined copies of House Bill 1337 (printer's no. 426), the Quota Act originally

introduced, printer's no. 672, which was the bill as re-reported from the House Committee on Liquor Control and passed by the House, and printer's no. 947, Senate reprint, which was the bill amended by the Senate and passed by the Senate, and then we have looked at the report of the conference committee on House Bill 1337, printer's no. 997. It is significant to note that the words "and clubs" do not first appear at all after the clause "exclusive of licenses granted to hotels as defined in this act,"—an amazing omission in the bill largely aimed—so say our friends who thought clubs are within the retail quota—at club mischief. In these printer's copies we saw the words "and clubs" appear for the first time after the clause "exclusive of licenses granted to hotels as defined in this act" in the conference committee report. A search of the 1939 legislative session minutes shows that the conference committee met, acted, printed this report, and the act passed in the closing moments of the last day of the session, to wit, May 29, 1939, when, as everyone knows, the utmost confusion exists in the General Assembly. Undoubtedly the conference committee intended to, and thought that it had, eliminated clubs completely from the quota restrictions, or else the words "and clubs" would never have been added there at all for the first time to the hotel exception in the conference report. There has obviously been no necessity for reënacting a phrase specially exempting clubs from the quota; but it might certainly have strengthened the opposing view had the legislature reënacted the broad provision that where "such number exceeds the limitation prescribed, no new licenses shall be granted except to hotels so long as such limitation is exceeded". The legislature never did. Without this sweeping declaration omitting clubs, there would never have been a possible chance to begin arguing that new liquor licenses for clubs are within the retail sales quota. The specific phrase, adding "and clubs" to the hotel exceptions, should prevail unless

another provision had later been enacted, or the legislature otherwise made it manifest that so sweeping a general provision was intended to prevail. See Cammie v. I. T. E. Circuit Breaker Co. et al., 151 Pa. Superior Ct. 246, 252. If the club exemption needed legislative emphasis, it received it—and our interpretation is strengthened by the fact—when in the session of 1941 the legislature did pass an act amending the Quota Act of 1939, and once again even more clearly excluded clubs from the quota this time, using the phrase "legitimate purpose clubs".

Of course, there are obvious similarities in the purchase for money by a club member of liquor at the bar of his club. But it is an absurd and far-fetched conclusion that this similarity wipes out the basic differences between a club—primarily organized for athletic, recreational, political, or social purposes, and a commercial eating place which sells liquor for a profit only. Of course, we should bear down with all force on the one-man club and all other club evils. But because these evils exist we ought not to forget the wide public interests frequently served by many fraternities, lodges, ex-service men's posts, and other clubs. When decently conducted clubs—the overwhelming number of them are decent—offer to members beverages in alcoholic form, they make this offer under circumstances which extend in addition to the liquor—a secondary consideration—such relaxation, entertainment, fellowship and shared backgrounds as cannot possibly be obtained in commercial restaurants and public eating places patronized by the public generally, where, as Judge Wilson aptly points out in the Moorland Lodge Case, 42 D. & C. 222, 231, club members "will find none of the things they desire". As to language that may be difficult to interpret, the legislature by the provisions of the Statutory Construction Act, supra, prefers to advance a public interest rather than a purely private and commercial interest.

This technical and narrow issue finds us divided, with the result that some of our colleagues will sustain automatic refusal by the Liquor Control Board of any and all applications for new club liquor licenses on the sole theory that the board has no power to grant them when the general retail liquor quota is exceeded. It would have been clearer had the amended act of 1941, hereinbefore mentioned, been approved by the Governor. He vetoed it with an ambiguous statement which does not make clear—if it be important—what his own interpretation of the amendment was. Those of us who believe that clubs are not within the quota act are not disposed to grant new club liquor licenses indiscriminately, recognize the Liquor Control Board's wide discretion in refusing applications for new club liquor licenses, and will continue to respect reasons assigned for that refusal when properly and lawfully presented in evidence before us.

### Order of court

And now, to wit, March 16, 1944, the appeal above entitled having come on for hearing de novo, the witnesses were sworn in open court, their testimony taken, and after full and careful consideration thereof, the order of the Pennsylvania Liquor Control Board of November 24, 1943, is reversed, and the board is ordered and directed to issue the license applied for by the appellant on October 1, 1943; the appellant to pay the costs.

MONTGOMERY, J., dissenting.—In support of my dissent from the action of the majority of the court in banc in the above cases, I assign the following reasons:

It appears that the main question of law involved is whether or not the Liquor License Quota Act of 1939, P. L. 806, commonly known as "the Liquor License Quota Act", is applicable to clubs. This question has been raised many times since the passage of the act,

and the decisions are practically equally divided. An examination of these decisions and the history of this particular statute convinces me that, after the quota has been reached, the act forbids the issuance of any licenses except hotel licenses to those hotels able to meet the requirements of the act.

Differences of opinion seem to have arisen in the various courts on account of the fact that the first part of section 2, setting forth the formula for determining the quota, excludes clubs as well as hotels. However, this is not irreconcilable with the latter part of the section, which makes hotels the only exception after the quota has been reached. This has been clearly pointed out in the opinion of the quarter sessions court of this county at 123 June session, 1942, misc., rendered by Judges McNaugher, Smith, and Park, and also in the opinion of Sherwood, J., in In re Seagrave Social Club's License, 37 D. & C. 575. Therefore, under the Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 51, providing: "When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit"; the construction so placed upon the act in those two decisions should be sustained, since there is no ambiguity.

Nevertheless, since there is such a diversity of opinion as to the spirit of the act and the intention of the legislature, it seems advisable to pursue the matter further and to apply the provisions of the Statutory Construction Act as though the words of the law were not explicit.

The construction statute lays down eight rules or means for determining the intent of the legislature under such circumstances. The first four of those rules are similar in nature and are as follows: First, occasion and necessity for the law; second, the circumstances under which it was enacted; third, the mischief

to be remedied, and fourth, the object to be attained. Some jurists have stated that the purpose of the Quota Act was directed at the corner saloon which offers to serve all customers: In re License of I. B. P. O. E. of W., John F. Moorland Lodge No. 801, 42 D. & C. 222, and Appeal of Legion Home Association of Danville, 48 D. & C. 123, 129. However, such a statement would be to say that all restaurants are disreputable or that all clubs are reputable. I believe that there are disreputable restaurants and clubs as well as hotels. That appears to be the reason the legislature did not include *all* hotels in its exception to the effect of the act and established stricter requirements for those hotels it intended to exclude.

It has been argued that there was no reason to place a restriction upon the number of club licenses to be issued because, first, clubs sell only to members, and, secondly, club licenses are issued only at the discretion of the Liquor Control Board. Both of these reasons are unsound. The first argument overlooks the fact that the provisions of the liquor act provide for the issuance of catering licenses to clubs so they may sell to nonmembers as well as to members. The second argument is unsound because clubs may change officers, stewards, and policies after convincing the Liquor Control Board that their purposes are bona fide and their intentions good. Thus they can overcome that safeguard which the legislature has seen fit to impose in the granting of club licenses. It is also well known that membership in some clubs may be obtained very easily, so that the matter of sale to members may also cease to be a very sound argument. Thus, the objects of the Quota Act may aptly apply to all licenses and possibly to public service licenses as well, which fact appears to have been overlooked in other discussions of this question. It appears the mischief to be remedied, the occasion and purpose of the law, and the circum-

stances under which it was enacted might relate to all types of licenses.

Appellants also argue that a sale by a club is not strictly a sale. However, in no section of the Malt Beverage License Law, or the Liquor License Law, is there any such distinction made; all provisions apply to all types of licensees, including clubs.

The fifth rule of construction laid down in the Statutory Construction Act, viz, "The former law, if any, including other laws upon the same or similar subjects," does not appear to be helpful because of the different manner of dispensing beverages since the repeal of the Eighteenth Amendment from the system prevailing in Pennsylvania prior thereto.

The sixth rule of construction, viz, "The consequences of a particular interpretation", has been used as an argument against my interpretation of the act for the reason that under my interpretation any number of club licenses might be issued prior to the attainment of the quota and none thereafter. It has been argued that this is an absurd result. My reply is that that is no more absurd or unreasonable than the result which would follow from the granting of malt beverage licenses exclusively up to the quota. In such case, no license for the sale of liquor could be issued so long as the quota was maintained by the holders of the malt beverage licenses. No argument has ever been raised upon this situation, so far as we can find. However, the legislature in 1941, by an act described as "veto no. 26", did recognize this condition and attempted to correct it, but the act did not become a law on account of the veto.

The seventh and eighth rules are as follows: viz, "The contemporaneous legislative history" and "legislative and administrative interpretations of such law." As stated in Loeb v. Benham et al., 153 Pa. Superior Ct. 601, "The history of this law is illuminating." I have undertaken to check the legislative journal from the

time this particular act was submitted to the 1939 legislature as House Bill 1337, with the view of determining the legislature's intent, and I find that on May 10, 1939, as shown at page 2992 of the Legislative Journal, the house was asked to amend this act by including club licenses as an exception. An amendment was offered to insert in the act—after the word "hotels" in line 12 of section 2—the words "and clubs". This amendment was offered after remarks (Legislative Journal, p. 2987) that the act covered clubs as well as restaurants. However, the amendment was not agreed to: Legislative Journal p. 2993. Thereafter, the act as now stated passed second and third reading in the House, was submitted to the Senate as Senate Bill 1040, passed first and second readings, and was brought to a vote for final passage, at which time one of the senators again offered an amendment to exclude clubs from the operation of same. This attempt, likewise, was unsuccessful and the amendment not approved: Journal p. 4627. However, since the act was to be referred to the conference committee, the suggested amendment "excluding clubs" was also referred to the committee. Thereafter, this committee reported the act back to the House, and back to the Senate without incorporating the amendment and, in the form we now find it, it was passed: Journal p. 5123. Certainly, in view of two unsuccessful attempts to read into the act as an exception the words "and clubs", it cannot now be argued that the legislature did not intend to include clubs within the Quota Act.

If such legislative action were not sufficient to answer the question involved here as to the true intention, our interpretation of the statute is further supported by subsequent action of the 1941 legislature, which passed an act amending the Liquor License Quota Act of 1939, P. L. 806, by inserting the words "and clubs" in the exception clause. However, it is to be noted that

even in this act the legislature did not mean to exclude all clubs from the operation of the act because it specifically provided that only "legitimate purpose clubs" should be covered in the exclusion feature. An examination of the Legislative Journal in connection with the passage of this amending act is also illuminating because in the discussion pertaining to the passage of same (Legislative Journal pp. 1543 and 1682-83) supporters of the bill argued that it should be passed to correct the alleged mistake which they had made in passing the Act of 1939. This, in itself, is an admission that the Act of 1939 as passed did not exclude clubs from its operation.

The Governor's message vetoing the 1941 act is also illuminating. He said: "Certainly it cannot be said, in view of the fact that there are 3,562 clubs in this Commonwealth already having club licenses, that there is any need for the issuance of any more club licenses."

The courts cannot now read into this statute the words "and clubs", as this would be doing something which the legislature refused to do in 1939 and attempted to do in 1941 but was prevented from doing by the Governor's veto. If the 1939 legislature made a mistake by including clubs within the operation of the act, the courts are without authority to correct this mistake. It must and can only be corrected by appropriate new legislation passed by the legislature and approved by the Governor.

After a careful study of the law as it now stands, together with all the other matters we are privileged to examine under authority of the legislative construction act aforesaid, I am of the opinion that, after the quota has been reached, the issuance of any new club license is prohibited by the Liquor License Quota Act of 1939.

Since it is admitted that the issuance of the licenses involved in these three cases would exceed the quota

established in the several municipalities in which the petitioners are located, and without reflecting in any way on the other qualifications of these petitioners, or of any clubs of similar nature, or upon the fitness or reputation of their officers or members, I would sustain the decision of the Liquor Control Board in all three cases and dismiss these several appeals.